# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 972 |
| | ) | |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES R. NORGLE, District Judge

Before the Court is Plaintiff's Motion for Summary Judgment. For the following reasons the Motion is denied, and the decision of the Commissioner is affirmed.

## I. BACKGROUND

### A. Facts

Plaintiff Jennifer Richards ("Richards") was born December 19, 1958 in Jamaica. She emigrated to the United States with her family when she was eleven years old, and eventually settled in the Chicago area. During at least part of the time period relevant to this case, Richards lived in Evanston, Illinois. She has four children, but the father is no longer a part of her family.

In February 1996, the Department of Children and Family services referred Richards to the St. Francis Hospital in Evanston for counseling. Richards attended counseling sessions at St. Francis from that point until May 2003. In July 2004, Richards resumed counseling sessions at St. Francis with both a licensed social worker and a psychiatrist, Dr. Vasilis Siomopoulos.

1

Records from counseling sessions at St. Francis indicate that Richards reported being sexually abused by a family member when she was a child. She also complained of difficulty sleeping, nightmares, anger management issues, irritability, and crying spells. Dr. Siomopoulos diagnosed Richards with anxiety and depression, and prescribed medications for these conditions.

In addition to her mental health problems, case records reveal that Richards suffers from two significant physical ailments. In September 2004, Richards underwent laser surgery to repair a retinal tear in her right eye, but, she asserts, she continues to experience problems with visual acuity and discomfort in the eye. Richards has also been diagnosed as morbidly obese, weighing over 300 pounds in September 2004. Other portions of the case record list Richards' weight as between 270 and 300 pounds at various times. In addition, Richards is on medication for high cholesterol levels, and reports that she has high blood pressure.

Despite these conditions, Richards maintained gainful employment from 1990 through January 2006. From 1990 to 2002, she worked approximately 30 hours per week as a cashier, customer service representative, and stock person at Venture and Walgreens stores. Starting in September 2003 and continuing until January 2006, she held similar positions at the Northwestern University bookstore.

## B. Procedural History

In October 2004, Richards applied for Social Security Disability Insurance Benefits, alleging that she became unable to work in September 2004 due to a retinal tear in her right eye. The Social Security Administration ("SSA") initially denied her application. The SSA again denied her claim after Richards requested reconsideration. The SSA's Explanation of Determination, dated April 5, 2005, reads in part:

> You said that you became disabled on 09/30/04 because of: Hole in right eye[.] The medical evidence in [the] file shows that your condition does cause some restrictions in your ability to function. However, based on your description of the job of customer service representative, we have concluded that you have the ability to return to that type of work. We have determined that your condition does not keep you from working. We considered the medical and other information, your age, education, training and work experience in determining how your condition affects your ability to work. If your condition gets worse and keeps you from working, write, call or visit any social security office about filing another application.

Admin. R., at 68.

Richards then requested a hearing before an Administrative Law Judge ("ALJ"). On July 13, 2006 an ALJ held a hearing on Richards' claim. Richards appeared at the hearing with a representative. A Vocational Expert ("VE") testified via teleconference. The ALJ issued a written Decision on August 23, 2006 in which she determined that Richards was not disabled. In making this determination, the ALJ found, inter alia, (1) that Richards had three severe impairments: slight decreased visual acuity due to a surgically repaired retinal tear, mild depression and anxiety, and obesity; (2) that these impairments did not solely or in combination meet the SSA's standard for a listed impairment; (3) that Richards had a physical Residual Functional Capacity ("RFC") that would allow her to lift 20 pounds occasionally, 10 pounds frequently, stand or walk up to 6 hours per day, and sit 8 hours per day; (4) that Richards' physical RFC precluded her from performing jobs requiring exposure to unprotected heights or dangerous machinery, and jobs requiring good binocular vision or good depth perception; and (5) that Richards' mental RFC precluded her from performing complex job tasks, but that she could still perform her past work as a customer service agent or cashier. ALJ Decision, at 3-8. The ALJ's Decision that Richards was not disabled became the final decision of the Commissioner

when the SSA Appeals Council denied review on November 9, 2007. See 20 C.F.R. § 416.1481; Schmidt v. Astrue, 496 F.3d 833, 841 (7th Cir. 2007).

On February 15, 2008, Richards through her attorney filed the instant Complaint in the Northern District of Illinois seeking judicial review of the Commissioner's decision. The Commissioner filed an Answer, along with a copy of the Administrative Record, on June 16, 2008. On July 28, 2008, Richards filed a Motion for Summary Judgment seeking remand to the SSA for a new hearing. The Motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

To make a successful claim for disability benefits under the Social Security Act, an individual must demonstrate that he or she is unable "'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months.'" Windus v. Barnhart, 345 F. Supp. 2d 928, 930 (E.D. Wis. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)). Social Security regulations prescribe a five-step test to determine whether an individual is disabled:

> The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe?' (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step, or on steps (3) and (5) to a finding that the claimant is disabled. A negative answer, at any point other than step (3), stops inquiry and leads to a determination that the claimant is not disabled.

Taylor v. Schweiker, 739 F.2d 1240, 1241 n.1 (7th Cir. 1984); see also Craft v. Astrue, 539 F.3d 668, 673-74 (7th Cir. 2008); 20 C.F.R. § 404.1520.

Under this five-step test, a claimant will be found presumptively disabled if he or she "makes the necessary showing at steps 1-3." Windus, 345 F. Supp. 2d at 930. If the claimant cannot show that he or she is presumptively disabled, "the ALJ must consider whether the claimant possesses the residual functional capacity ("RFC") to perform her past work." Id. If the claimant does not have the necessary RFC to return to his or her prior position, "the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of other jobs that exist in the national economy." Id. The Commissioner can satisfy this burden by either presenting the testimony of a vocational expert, or "through the use of the 'Medical-Vocational Guidelines' . . . a chart that classifies a person as disabled or not disabled based on her exertional ability, age, education, and work experience." Id. at 930-31 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2).

The Court will not disturb the Commissioner's finding as to a claimant's disability as long as that decision "is supported by substantial evidence and is free from legal error." Steele, 290 F.3d at 940; see also Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003). "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." Johansen v. Barnhart, 314 F.3d 283, 287 (7th Cir. 2002). "To determine if substantial evidence exists, the court reviews the record as a whole, but is not allowed to substitute its judgment for the ALJ's by 'reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'" Cannon v. Apfel, 213 F.3d 970, 974 (7th Cir. 2000) (quoting Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999)). The District Court's

review is therefore limited to determining whether the Commissioner's finding of not disabled is supported by substantial evidence. See Lee v. Sullivan, 988 F.2d 789, 792 (7th Cir. 1993).

**B. The Commissioner's Determination that Richards is Not Disabled is Supported by Substantial Evidence**

It is undisputed that Dr. Siomopoulos diagnosed Richards with both anxiety and depression and prescribed Richards medications for these conditions. When a claimant seeking disability payments suffers from such conditions, a mental health expert must be consulted during the administrative process.

> An initial determination . . . that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

42 U.S.C. § 421(h); see also Stambaugh v. Sullivan, 929 F.2d 292, 295 (7th Cir. 1991).

SSA regulations also provide that in these types of cases, a medical expert must review any evidence of mental impairment and apply a "special technique" to determine the severity of the impairment. The "special technique" requires that the SSA first make a preliminary evaluation of the claimant's symptoms. 20 C.F.R. § 404.1520a(b)(1). The SSA then must rate the degree of the claimant's limitations in the areas of "daily living; social functioning; and concentration, persistence, or pace" using a five point scale. Id. § 404.1520a(c)(4). The next step of the "special technique" requires the SSA to rate the claimant's "degree of functional limitation." Id. § 404.1520a(d). At the initial and reconsideration levels of review, a medical or psychological expert must assess the severity of the claimant's condition(s), id. at § 404.1520a(e)(1), and the SSA must, at these levels of review, "complete a standard document to

6

record how [it] applied the technique." Id. § 404.1520a(e). At the ALJ hearing level of review, the ALJ must incorporate the findings and conclusions of the experts into his or her written Decision. Id. at § 404.1520a(e)(2); Craft, 539 F.3d at 675.

In this case, Richards asserts, and the Commissioner admits, the "special technique" was not followed. Specifically, the parties agree that there is no documentation in the record that indicates a mental health expert ever reviewed the evidence of Richards's mental conditions. The Commissioner, however, asserts that this amounts to harmless error.

The harmless error rule applies to administrative as well as judicial proceedings. Sanchez v. Barnhart, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision."). In the context of SSA disability proceedings, the SSA's failure to utilize the "special technique" can be harmless error. Craft, 539 F.3d at 675 (citing Keys v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003)). This will be the case where an ALJ, even if he or she does not expressly use the "special technique," builds an "accurate and logical bridge" between the medical evidence and his or her determination as to what sorts of work a claimant could do. Craft, 539 F.3d at 678. To properly build that "logical bridge," the ALJ is not required to address every piece of medical evidence in the record, but the ALJ must take into account any evidence that is "particularly critical" to the analysis of the claimant's mental RFC. Id. Where an ALJ considers and accounts for this "critical" evidence, the failure to utilize the "special technique" can therefore be harmless error. See id.

After examining the ALJ's Decision, the Court determines that the ALJ properly addressed the critical evidence regarding Richards' mental health conditions in this case. The ALJ recounted an April 1995 psychological examination in which Richards was "alert, fully

7

oriented and her affect was appropriate." ALJ Decision, at 5. The ALJ noted that Richards received a low-average I.Q. score, and a score placing her within the range of clinical depression on the Beck Depression Inventory. Id. The ALJ then considered the results of a September 2005 psychiatric examination of Richards which revealed that "[h]er attention and insight were good and her memory was intact. Her thought processes were organized. The Claimant was neat, alert, [and] cooperative. Her speech was normal. There was no evidence of delusions or hallucinations. The diagnosis was depression, NOS, and problems with her social environment."[1] Id. The exam also revealed that Richards' "GAF" (Global Assessment of Functioning) was 60-70, indicating mild symptoms or mild difficulty in social, school, or work-related functioning.[2] Id. The ALJ acknowledged that Richards was prescribed medication and therapy with a social worker, but noted that Richards initially did not attend the therapy sessions. Id. In May 2006, the ALJ explained, Richards visited her psychiatrist once more, and was prescribed medication for anxiety and mild depression. Id. Finally, the ALJ recounted, Richards' last visit to her psychiatrist occurred on July 13, 2006. Id. Richards then reported that she was working part time, but still suffered from depression, anxiety, and lack of energy. Id. She was again prescribed medication. Id. at 6. The ALJ also noted that a licensed social worker opined that Richards' depression and anxiety interfered with her ability to work. Id.

---

[1] The ALJ does not explain the meaning of the term "NOS," but the Court's research indicates that Richards' psychiatrist may have been using a shorthand term indicating that Richards was exhibiting a spectrum of symptoms that do not fall into any pre-defined categories. http://www.aoecoepsych.com/PsychiatryNOS.pdf.

[2] The GAF scale "is a 100-point scale that measures patients' overall level of psychological, social, and occupational functioning on a hypothetical continuum." http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp; http://www.savodnik.com/pdf/2006-5-NewsGram.pdf.

8

In short, there is every indication in the ALJ's Decision that the ALJ considered and took into account the critical record evidence regarding Richards' mental conditions in determining that Richards could return to her prior work. Richards' mental issues, the ALJ explained, were significant but not disabling. "Thus, while the claimant has ongoing problems with depression and anxiety, her GAF of 60-70 indicates that she is functioning reasonably well and has the ability to sustain gainful employment as evidenced by the fact that she has consistently worked part time." Id. The Court therefore finds that Defendant's failure to utilize the "special technique" in this case is harmless error. See Craft, 539 F.3d at 678.

The Court also finds that the ALJ's ultimate determination – that Richards' mental and physical impairments considered together do not prevent her from working – is supported by substantial evidence. See Steele, 290 F.3d at 940. The record shows, and the ALJ acknowledged, that in addition to Richards' mental conditions, she suffers from obesity and decreased visual acuity due to a surgically repaired retinal tear. However, Richards' mental and physical RFCs indicate, and testimony from the VE confirmed, that she can perform non-complex, low-stress work such as cashier, customer service agent, or office assistant. The VE testified that there are thousands of these sorts of jobs available in the Chicagoland area.

Moreover, after examining the record, the ALJ found Richards' assertion that she could not work because of her mental and physical conditions not credible. "The claimant had described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. As mentioned earlier, the record reflects work activity after the alleged onset date [of Richards' alleged disability]." ALJ Decision, at 6.

Testimony offered by Richards at her hearing before the ALJ also supports the ALJ's finding that Richards was not credible.

> ALJ: Okay. And at the Venture [store]? What were you doing at the Venture?
> RICHARDS: Same thing, cashier, customer service.
> ALJ: Okay. Why can't you do that work now?
> RICHARDS: Well, right now I'm suffering from stress, and – in the morning time, I'm – when I get up – I'm not feeling good in the morning time, because at nighttime I'm up late. I cannot sleep at night. I have nightmare[s], so – in the morning time I cannot get up. And when I do I usually go late. In the morning time, I have to get up in the morning time. I'm not – in the morning time, my body's not –
> ALJ: Okay.
> RICHARDS: – my body don't feel good.
> ALJ: Why can't you do a low stress job where you might only be – have to work in the afternoon or evening, say, like a janitor or hotel cleaner? Why can't you do that kind of work?
> RICHARDS: Because my body's not feeling good right now. Right now they have me on medication.
> ALJ: Okay. Not feeling good doesn't tell me anything. It doesn't tell me why you can't work. What doesn't feel well?
> RICHARDS: Well, I cannot work full time right now.
> ALJ: Why not?
> RICHARDS: Because I'm not feeling good right now.
> ALJ: Okay. Well, a lot of people don't feel well, and they're still able to work. What prevents you from being able to work?
> RICHARDS: Well, I have a problem with the stress, and – I'm not – I don't – I can't function right now. I'm not feeling good in the morning time. I get upset easily. I get mad[] easily. Sometimes I can't think.

SSA Hearing Tr., at 9-10. The ALJ's Decision also included a reference to Richards' application for unemployment benefits.

Without making any credibility determination of its own, see Cannon, 213 F.3d at 974, the Court simply notes that there is sufficient evidence in the record to support the ALJ's finding that Richards was not a credible witness on her behalf. See Steele, 290 F.3d at 940. After examining the record in this case, the Court determines that Richards' lack of credibility,

combined with record evidence of her physical and mental RFC, and her work history during the time she claimed to be disabled, provide substantial evidence that she is not disabled. See id.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the SSA's failure to utilize the "special technique" was harmless error, and that the ALJ's determination that Richards is not disabled is supported by substantial evidence. The Court will therefore not disturb the ALJ's finding that Richards is not disabled. The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: April 21, 2009